UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JILL KILEY, et al.,** } | |
| } | |
|     **Plaintiffs,** } | |
| } | |
| v. } | Case No.: 2:17-cv-01756-RDP |
| } | |
| **MEDFIRST CONSULTING** } | |
| **HEALTHCARE STAFFING, LLC,** } | |
| } | |
|     **Defendant.** } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiffs' Motion for Conditional Collective Action Certification and Court-Supervised Notice (Doc. # 50). This motion has been fully briefed (*see* Docs. # 64, 80), and the court held oral argument on January 4, 2018. Following oral argument, the parties submitted supplemental briefing. (Docs. # 99, 100). For the reasons explained below, the court concludes that Plaintiffs' Motion for Conditional Collective Action Certification is due to be granted in part.

**I.    Background**

Plaintiffs Jill Kiley and Marcus Payne originally filed this Fair Labor Standards Act ("FLSA") suit against Defendant in the District of Oregon. (*See* Doc. # 1). Defendant sells information technology and educational services to healthcare providers across the United States. (*Id.* at ¶ 5). Specifically, it helps healthcare companies find "consultants" to implement "industry-specific software," customize that software, and train personnel to use it. (Doc. # 65 at 1). To perform these services, Defendant maintains a "consultant" network with hundreds of consultants. (Doc. # 1 at ¶ 6). Plaintiffs have worked as consultants for Defendant. They

provided "information technology support services" to Defendant's clients between 2013 and 2016. (*Id.* at ¶¶ 3-4). As consultants, Plaintiffs Kiley and Payne trained and supported hospital personnel that used "EPIC, an electronic medical record-keeping software." (Docs. # 50-4 at 2; 50-5 at 2).

Plaintiffs claim that Defendant improperly classified them as independent contractors instead of employees. (Doc. # 1 at ¶¶ 14, 43). In arguing that that they actually were employees of Defendant, Plaintiffs aver that: (1) they received assignments from Defendant; (2) they signed contracts with Defendant before each project that contained restrictive covenants; (3) they received training from Defendant about EPIC software and methods for training medical personnel; (4) a project manager employed by Defendant supervised them on each project; (5) they reported to Defendant about their job performance; and (6) they submitted timesheets and expense reports to Defendant. (*See* Docs. # 50-4 at 2-3; 50-5 at 2-3). According to at least one affiant, he had to wear a particular vest and an identification badge while working for Defendant. (Doc. # 50-7 at 2). Another former consultant recounts that Defendant discouraged consultants from refusing assignments during training. (Doc. # 50-6 at 2-3).

Plaintiffs assert that Defendant violated the FLSA when it misclassified them and failed to pay them overtime wages during weeks in which they worked more than 40 hours. (Doc. # 1 at ¶ 28). Plaintiffs further contend that an overtime exemption for computer workers is inapplicable to them. (*Id.* at ¶¶ 30-33). Plaintiffs have added Oregon and Pennsylvania state-law claims based on Defendant's failure to pay overtime wages. (*See* Doc. # 95 at ¶¶ 76-90). To date, seventy five plaintiffs have sought to join this action as opt-in plaintiffs.

## II. Legal Standards Applicable to Conditional Certification

The FLSA authorizes the filing of collective actions when the following conditions are met:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The purpose of such a collective action is "to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. Dekalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003). A district court has the discretion to conditionally certify a collective action if doing so would permit the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). Our Circuit has made clear that before exercising that discretion and "facilitating notice, a district court should satisfy itself that there are other employees who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (internal quotation marks and modifications omitted).

In *Hipp v. Liberty National Life Insurance Co.*, the Eleventh Circuit "suggest[ed]" a "two-tiered approach to certification of § 216(b) opt-in classes" to assist district courts in resolving the similarly situated inquiry. 252 F.3d 1208, 1219 (11th Cir. 2001).

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

3

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial . . . .

*Id.* at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). Contrary to Defendant's position, the notice-stage standard for ruling on conditional certification is appropriate in this case because no discovery has occurred. *Cf. Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1233 (S.D. Ala. 2008) (applying the lenient notice-stage standard to a conditional certification motion when discovery had not occurred). At the conditional certification stage, a plaintiff must present a "reasonable basis" for his or her claim that there are other similarly situated employees. *Morgan*, 551 F.3d at 1260.

The Eleventh Circuit has not yet adopted a precise definition of the phrase "similarly situated." *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 676-77 (S.D. Fla. 2013), *class decertified*, 2015 WL 5084135 (S.D. Fla. Aug. 28, 2015). In determining an appropriate test, the court is mindful that the ultimate goal of this inquiry is to determine whether the named plaintiffs held "similar" positions to those held by the putative plaintiffs they seek to include in the action, *Hipp*, 252 F.3d at 1217, and whether a "reasonable basis" supports their belief that the defendant has committed similar, class-wide violations of the FLSA, *see Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). A plaintiff "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions . . . ." *Marsh v. Butler Cty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003). Some courts have applied a five factor test to help determine

whether the named plaintiffs are similarly situated to the opt-in plaintiffs, *see Smith v. Tradesmen International, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003), but the court finds this test unconvincing because it seeks to cabin the open-ended inquiry mandated by § 216(b) into a narrow checklist of factual issues.

One district court discussing a proposed FLSA collective action involving employees with different job titles described the following parameters for determining whether the "similarly situated" requirement of § 216(b) is met:

> It is clear from the language of *Dybach*, that plaintiffs may meet their burden by showing that they have the same job title, job requirements, pay, and so forth. It is more difficult for plaintiffs to meet this burden when they work at different geographical locations or in different departments, have different job titles, and have different immediate supervisors. Such plaintiffs have been able to meet their burden by making "substantial allegations that the putative class members were together the victim of a single decision, policy, or plan." [*Thiessen v. G.E. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)].

*Roots v. Morehouse Sch. of Med.*, 2008 WL 11334083, at *5 (N.D. Ga. Jan. 18, 2008). From the submitted affidavits, it is clear that the named Plaintiffs and the putative opt-in plaintiffs held different job titles. Plaintiffs Kiley and Payne worked as "Consultants" for Defendant. (Docs. # 50-4 at 2; 50-5 at 2). In contrast, Linda Chinda worked as a "Go-Live Support Consultant" for Defendant. (Doc. # 50-6 at 2). Other putative opt-in plaintiffs worked under the titles of "Healthcare IT Consultant" (Doc. # 80-1 at 2), "At-the-Elbow Support" (*id.*; Docs. # 80-2 at 2; 80-3 at 2), "Clinical Trainer" (Doc. # 80-3 at 2), "Support Consultant" (Doc. # 80-4 at 2), "Classroom Educator" (Doc. # 80-5 at 2), "At-the Elbow Consultant" (Doc. # 80-8 at 2), "At-the-Elbow Resource" (*id.*), and "EPIC Consultant" (*id.*).[1] Likewise, it is readily apparent that the

---

[1] These are merely the job titles reflected in the affidavits Plaintiffs submitted. The consultants who submitted affidavits for Defendant aver that they worked under the titles of "Trainer" (Docs. # 66 at 3; 68 at 4), "Proctor" (*id.*), and "Team Lead" (*id.*).

alleged employees worked in geographically disparate locations. The named Plaintiffs worked in medical facilities in Indiana, North Carolina, Oregon, and Pennsylvania. (Docs. # 50-4 at 2; 50-5 at 2). Chinda and Bahta worked on projects in medical facilities in Alabama, Indiana, North Carolina, Pennsylvania, and Utah. (Docs. # 50-6 at 2; 50-7 at 2). The affidavits submitted by Plaintiffs with their reply brief show that putative opt-in plaintiffs also worked in medical facilities in Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Maryland, Massachusetts, Michigan, New Hampshire, and Ohio. (Docs. # 80-1 at 3; 80-2 at 3; 80-3 at 3; 80-4 at 3; 80-5 at 3; 80-6 at 3; 80-7 at 3; 80-9 at 3). Because of these positional and geographical distinctions, in order to certify a collective action, Plaintiffs must present substantial allegations that the named plaintiffs and the putative opt-in plaintiffs suffered FLSA violations originating from a common decision, policy, or plan. *Roots*, 2008 WL 11334083, at *5; *Thiessen*, 267 F.3d at 1102.[2]

## V. Analysis of Conditional Certification

Plaintiffs ask the court to conditionally certify a collective action for "[a]ll individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") in the United States from March 23, 2014 to the present." (Doc. # 50 at 7). Defendant objects to conditional certification because it contends (1) the court will need to conduct individualized determinations to determine whether any particular consultant acted as an employee or an independent contractor, and (2) a collective action would not promote judicial economy. Defendant does not dispute that there are other

---

[2] The court recognizes the split in authority regarding whether the economic realities test should be considered at the first stage of conditional certification or reserved for consideration at the second stage. *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, 2015 WL 7075971, at *5 (W.D. Tex. Oct. 5, 2015) (collecting cases). Given the likelihood that any analysis of the economic realities test will require the court to address the merits of the action, the court finds that consideration of economic realities is best performed at the decertification stage.

6

consultants who wish to opt into this FLSA action, and the dozens of consents filed by Plaintiffs show that is in fact true. *Morgan*, 551 F.3d at 1259.

After careful review, the court concludes that the named Plaintiffs have presented a reasonable basis for finding that they are similarly situated to the putative opt-in plaintiffs, to the extent that the class of opt-in plaintiffs is limited to at-the-elbow trainers and other educational personnel who worked on-site at health care facilities. As discussed above, the trainers and educational personnel held a variety of job titles and worked in a wide variety of locations. Nevertheless, the submitted affidavits and pleadings indicate that the named Plaintiffs and putative opt-in plaintiffs worked under common employment policies that precluded any of them from receiving overtime pay from Defendant.

Plaintiffs' pleadings and submitted affidavits provide a reasonable basis for concluding that a centralized policy or set of policies led Defendant to classify trainers as independent contractors, rather than employees. Kiley, Payne, Chinda, and Bahta all state that Defendant paid them an hourly rate with no overtime pay. (Docs. # 50-4 at 3; 50-5 at 3; 50-6 at 2; 50-7 at 2). Notably, none of the consultants who signed affidavits on behalf of Defendant claim to have received overtime pay, as all of them state that they worked as independent contractors. (Docs. # 66-71). And, the affidavit filed by Defendant's chief executive officer and president offers no indication that Defendant applied different policies to determine the classification of particular consultants. (*See* Doc. # 65). Overall, the evidence before the court suggests that all trainers and consultants were classified as independent contractors without regard for the individual projects assigned to them. Given the undisputed fact that the trainers and educational personnel worked in several different states on several different projects for several different health care entities,

the universal failure to provide overtime pay strongly suggests, at least at this stage, that Defendant applied common pay policies to all of its trainers and consultants.

Plaintiffs' affiants all aver that they worked more than 40 hours per week while training health professionals on-site and that they received no overtime pay. Plaintiffs present a common FLSA theory of relief: Defendant misclassified its consultants as independent contractors, rather than employees, and had them work more than 40 hours per week without overtime pay. Defendant may have employed some independent contractors in other fields (such as software customization), but this dissimilarity between the named Plaintiffs and the putative opt-in plaintiffs is best addressed by reducing the scope of the proposed class to on-site trainers.

As the parties recognize (Docs. # 50 at 17-19, 64 at 12-13), the court must apply the economic realities test to determine whether the consultants actually should be classified as Defendant's employees. For a worker to be classified as an employee, he or she must be dependent -- as a matter of economic reality -- upon the business with which he or she is connected. *See Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). Although these factors are not exclusive, courts commonly consider six factors to assist in determining whether an individual is an employee covered by the FLSA:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.*

To the extent it is appropriate for the court to consider whether the economic realities test can be easily applied on a class-wide basis, *see Herrera v. Mattress Firm, Inc.*, 2017 WL 4270619, at *7 (S.D. Fla. Sept. 26, 2017), Plaintiffs have offered substantial evidence that it can be applied across the class. Plaintiffs' affidavits mention that educational personnel received an hourly wage for work that did not change based on their managerial skills in handling the work assigned during the projects. (*See, e.g.*, Docs. # 50-4 at 3; 50-5 at 3; 50-6 at 2; 50-7 at 2). None of the testimony in Defendant's affidavits indicates that an on-site educational worker could receive additional profit based upon his or her managerial skill. Moreover, Plaintiffs and other on-site educational personnel appear to have performed services for which they could not hire subcontractors. Finally, the question of whether on-site educational personnel rendered an integral service for Defendant's business is a common question that can be answered for the entire group of opt-in plaintiffs. Thus, at least three of the *Scantland* factors appear to present issues that may be resolved on a class-wide basis.

Defendant argues that the individualized factual determinations that will have to be made to determine whether particular consultants worked as employees or independent contractors overrides any efficiency that would be gained from a collective action. But, the necessity of a fact-intensive inquiry does not preclude an FLSA collective action where the plaintiffs share common job traits. *Morgan*, 551 F.3d at 1263. Indeed, the *Scantland* opinion, which analyzed whether a cable installation contractor's technicians were employees for purposes of the FLSA, arose from a conditionally certified collective action. *Id.* at 1310. Plaintiffs' affidavits show that they share common job traits with putative opt-in plaintiffs, including receiving an hourly rate

9

without overtime, performing on-site training of medical personnel, and signing restrictive covenants before commencing work. Issues arising from the individualized inquiries Defendant anticipates can be addressed at the decertification stage, after the parties have an opportunity for discovery.

For the foregoing reasons, despite the geographic dispersion of the consultants and the variety of titles the on-site trainers held, Plaintiffs have presented a reasonable basis for certifying a collective action for on-site trainers and educational personnel who worked on behalf of Defendant. The parties are directed to meet and confer and file a joint report discussing the best means for defining a class limited to such trainers and educational personnel.

## VI. Objections to Plaintiffs' Proposed Notice

First, Defendant objects to the proposed 90-day opt-in period and suggests a 45-day opt-in period. (Doc. # 64 at 20). The court finds a 90-day period more appropriate, especially given the geographically dispersed nature of the opt-in class.

Second, Defendant objects to Plaintiffs' request that a reminder be sent to potential opt-in plaintiffs halfway through the opt-in period. (*Id.* at 20-21). The court agrees with Defendant that a reminder notice could improperly suggest the court's endorsement of Plaintiffs' claims. *See Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1074-75 (S.D. Ohio 2016). Therefore, the court will not authorize Plaintiffs to send reminder notices halfway through the opt-in period.

Third, Defendant argues that the court should limit the notice period to two years, rather than three years, because Plaintiffs have provided no evidence of willfulness. (Doc. # 64 at 21). Plaintiffs allege in the Complaint, though, that Defendant willfully violated the FLSA. (Doc. # 1 at ¶ 45). And, the issue of whether an FLSA violation is willful is generally a factual issue

resolved at summary judgment or trial. *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 835 (E.D. Va. 2008). The record before the court is insufficiently developed for the court to make a determination of whether any FLSA violation was willful. *Cf. id.* at 835-36 (declining to limit an FLSA notice period to two years at the notice stage). Thus, the court grants Plaintiffs' request for a three-year notice period from the date of this Memorandum Opinion and the associated Order.

Fourth, Defendant argues that the court should deny Plaintiffs' requests to send e-mail and text message notices to potential opt-in plaintiffs. (Doc. # 64 at 21-23). Plaintiffs respond that notice by e-mail and text message is appropriate because the consultants who could opt in to this action "are highly mobile and often work away from home for long periods of time." (Doc. # 80 at 10-11). The affidavits before the court reveal that the on-site trainers typically work away from their residences, and some trainers work on-site for more than a year at a time. (*See, e.g.* Doc. # 50-4 at 2) (Kiley's testimony that she worked in North Carolina, Oregon, and Pennsylvania, and that her longest project lasted 13 months). Given Plaintiffs' evidence of transiency, and given that persons employed in such positions are more inclined to receive written communications via electronic (as opposed to U.S.) mail, notice by e-mail and direct mail is warranted here to protect judicial economy and avoid the added step of resending notices. *See Fenley*, 170 F. Supp. 3d at 1073-74 (approving dual-method service of notice where the putative opt-in plaintiffs worked away from home for months at a time). Having said that, the court is concerned that a text message notice could be incomplete and might not convey the seriousness of the communication. Notably, Plaintiffs have not submitted a proposed text message notice for the court's review. *Cf. Irvine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 & n. 1 (D.S.C. 2015) (approving service of notice by text message after

reviewing the proposed shortened notice and finding that version to be fair and appropriate). Nor have Plaintiffs argued that Defendant commonly used text messages to communicate with consultants. *Cf. Bhumithanarn v. 22 Noodle Market Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (approving service of notice by text message where the employees were transient and the defendants commonly communicated with them by text message). Accordingly, the court grants Plaintiffs' request to serve the putative opt-in plaintiffs by e-mail but denies the request to serve them by text message.

Finally, Defendant raises objections to some portions of the notice and some omissions from the notice. (Doc. # 64 at 23-26). The court directs the parties to meet and confer about these disputes, attempt to resolve their differences, and submit a joint report regarding the language of the notice to be sent to putative opt-in plaintiffs. The court will set a later hearing if these disputes remain unresolved.

## VII. Conclusion

For the reasons explained above, Plaintiffs' Motion for Conditional Collective Action Certification and Court-Supervised Notice (Doc. # 50) is due to be granted in part. The parties are directed to meet and confer about (1) an appropriate definition for the narrowed class conditionally certified by the court and (2) Defendant's objections to the contents of the notice to putative opt-in plaintiffs. An Order consistent with this Memorandum Opinion will be entered.[3]

---

[3] During oral argument, Plaintiffs' counsel asked the court about whether equitable tolling could be granted. But, Plaintiffs have not raised that issue in their latest brief (*see generally* Doc. # 100), and the court assumes that equitable tolling is not being sought at this time.

**DONE** and **ORDERED** this February 23, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE