FILED
2019 Oct-24  AM 09:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JILL KILEY, MARCUS PAYNE, BRITTNEY RELLIFORD, BABATUNDE OLASEINDE, and ROBERT FARLEY, individually and on behalf of all others similarly situated, )))))))) | Civil Action No. 2:17-cv-01756-RDP |
| Plaintiffs, )) | **THIRD AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |
| v. ) | |
| MEDFIRST CONSULTING HEALTHCARE STAFFING, LLC and BRIAN SMITH, ))))) | |
| Defendant. )) | |

Plaintiffs Jill Kiley, Marcus Payne, Brittney Relliford, Babatunde Olaseinde, and Robert Farley, through their undersigned counsel, individually and on behalf of all persons similarly situated, file this Class and Collective Action Complaint against Defendants MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") and Brian Smith ("Smith") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Oregon, Pennsylvania, North Carolina, New York, Maryland, Ohio, New Jersey, Illinois, Maine and Utah State Law. Plaintiffs allege that although Defendants classified them and other similarly situated consultants as independent contractors, they were in fact Defendants' employees for purposes of federal and state law, and were not paid overtime wages when they worked over forty (40) hours in a week. The following allegations are based on personal knowledge as to Plaintiffs' own conduct, and are made on information and belief as to the acts of others.

1

**JURISDICTION AND VENUE**

1.      Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction over Plaintiffs' Oregon, Pennsylvania, North Carolina, New York, Maryland, Ohio, New Jersey, Illinois, Maine and Utah state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to Plaintiffs' claims under the FLSA that they form part of the same case or controversy.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to Plaintiffs' claims occurred within this Judicial District.

4.      The Court has personal jurisdiction over Defendant MedFirst Consulting Healthcare Staffing since Defendant MedFirst has its headquarters in Birmingham, Alabama, in this judicial district. MedFirst's conduct and policies underlying this case therefore have their origin in this judicial district.

5.      The Court has personal jurisdiction over Defendant Brian Smith since Defendant Smith resides in Birmingham, Alabama, in this judicial district, and since his work as President and CEO of MedFirst Consulting has taken place in Birmingham, Alabama, in this judicial district.

**PARTIES**

6.      Plaintiff Jill Kiley is an individual residing in St. Petersburg, Florida.  Kiley worked for Defendant as a consultant providing training and support to Defendant's clients at Sky Lakes Medical Center in Klamath Falls, Oregon between August 2015 and September 2016; at Forsythe Medical Center in Winston-Salem, North Carolina in October 2016; and at Allegheny Health Network in Pittsburgh, Pennsylvania from September to December 2014.

7.      Plaintiff Marcus Payne is an individual residing in South Euclid, Ohio.  Payne worked for Defendant as a consultant providing training and support to Defendant's clients at Rogue Regional Medical Center in Medford, Oregon; Sky Lakes medical Center in Klamath Falls, Oregon; and at Deaconess Health Systems in Vincennes, Indiana between 2013 and 2016.

8.      Plaintiff Brittney Relliford is an individual residing in Cordova, Tennessee. Relliford worked for Defendant as a consultant providing training and support to Defendant's clients at Einstein Hospital in Philadelphia, Pennsylvania; MedStar Health in Baltimore, Maryland; Albany Medical Center in Albany, New York; Henry Ford Health System in Jackson, Michigan; Spectrum Health in Grand Rapids, Michigan; St. Lupe Health System in Toledo, Ohio; MedStar in McLean, Virginia; and Texas Health in Dallas and Fort Worth, Texas between October 2016 and January 2018.

9.      Plaintiff Babatunde Olaseinde is an individual residing in Richmond, Texas. Olaseinde worked for Defendant as a consultant providing training and support to Defendant's clients at University of Chicago in Chicago, Illinois; Novant Health in Thomasville, North Carolina; Allegheny Health in Pittsburgh, Pennsylvania; and CentraState Medical Center in Freehold, New Jersey between June 2014 and December 2016.

10.     Plaintiff Robert Farley is an individual residing in McDonough, Georgia. Farley worked for Defendant as a consultant providing training and support to Defendant's clients at InterMountain Health in Provo, Utah, St. George, Utah and Murry, Utah; Riverton Hospital in Riverton, Utah; USA Children and Women's Hospital in Mobile, Alabama; Allegheny Health in Erie, Pennsylvania; Reid Hospital in Richmond, Indiana; and St. Mary's Regional Medical Center in Freeport, Maine between April 2016 and May 2018.

11.     Defendant MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") is a corporation providing information technology and educational services for the healthcare industry across the country. MedFirst maintains its corporate headquarters in Birmingham, Alabama.

12.     MedFirst employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

13.     MedFirst's annual gross volume of sales made or business done exceeds $500,000.

14.     Defendant Brian Smith is an individual residing in Birmingham, Alabama. During all relevant times, Smith was the president and CEO of MedFirst, and was responsible for the company's decisions with regard to MedFirst's classification of consultants as independent contractors, and the compensation of consultants at a set hourly rate for all hours worked. Upon information and belief, Brian Smith appears as a signatory on all contracts with consultants.

**COLLECTIVE AND CLASS DEFINITIONS**

15.     Plaintiffs bring Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following opt-in litigants:

> All individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") in the United States from March 23, 2014 to the present ("FLSA Class").

16.     Plaintiffs Kiley and Payne bring Count II of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing,

LLC ("MedFirst") in the state of Oregon from March 23, 2015 to the
present ("Oregon Class").

17.     Plaintiffs Kiley, Relliford and Olaseinde bring Count III of this lawsuit as a class

action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

All individuals who were classified as independent contractors while
performing consulting work for MedFirst Consulting Healthcare Staffing,
LLC ("MedFirst") in the state of Pennsylvania from March 23, 2014 to the
present ("Pennsylvania Class").

18.     Plaintiff Kiley brings Count IV of this lawsuit as a class action pursuant to Fed. R.

Civ. P. 23, on behalf of herself and the following class:

All individuals who were classified as independent contractors while
performing consulting work for MedFirst Consulting Healthcare Staffing,
LLC ("MedFirst") in the state of North Carolina from March 23, 2015 to
the present ("North Carolina Class").

19.     Plaintiff Relliford brings Count V of this lawsuit as a class action pursuant to Fed.

R. Civ. P. 23, on behalf of herself and the following class:

All individuals who were classified as independent contractors while
performing consulting work for MedFirst Consulting Healthcare Staffing,
LLC ("MedFirst") in the state of New York from March 23, 2011 to the
present ("New York Class").

20.     Plaintiff Relliford brings Count VI of this lawsuit as a class action pursuant to

Fed. R. Civ. P. 23, on behalf of herself and the following class:

All individuals who were classified as independent contractors while
performing consulting work for MedFirst Consulting Healthcare Staffing,
LLC ("MedFirst") in the state of Maryland from March 23, 2014 to the
present ("Maryland Class").

21.     Plaintiff Relliford brings Count VII of this lawsuit as a class action pursuant to

Fed. R. Civ. P. 23, on behalf of herself and the following class:

All individuals who were classified as independent contractors while
performing consulting work for MedFirst Consulting Healthcare Staffing,

LLC ("MedFirst") in the state of Ohio from March 23, 2015 to the present ("Ohio Class").

22.     Plaintiff Olaseinde brings Count VIII of this lawsuit as a class action pursuant to

Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") in the state of New Jersey from March 23, 2015 to the present ("New Jersey Class").

23.     Plaintiff Olaseinde brings Count IX of this lawsuit as a class action pursuant to

Fed. R. Civ. P. 23, on behalf of himself and the following class:

> All individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") in the state of Illinois from March 23, 2014 to the present ("Illinois Class").

24.     Plaintiff Farley brings Count X of this lawsuit as a class action pursuant to Fed. R.

Civ. P. 23, on behalf of himself and the following class:

> All individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") in the state of Maine from March 23, 2014 to the present ("Maine Class").

25.     Plaintiff Farley brings Count X of this lawsuit as a class action pursuant to Fed. R.

Civ. P. 23, on behalf of himself and the following class:

> All individuals who were classified as independent contractors while performing consulting work for MedFirst Consulting Healthcare Staffing, LLC ("MedFirst") in the state of Utah from March 23, 2014 to the present ("Utah Class").

26.     The FLSA Class, the Oregon Class, the Pennsylvania Class, the North Carolina

Class, the New York Class, the Maryland Class, the Ohio Class, the New Jersey Class,

Illinois Class, the Maine Class and the Utah Class are together referred to as the "Classes."

27.     Plaintiffs reserve the right to re-define the Classes prior to notice or class certification, and thereafter, as necessary.

## FACTS

28.      As a leading healthcare information technology firm, MedFirst provides training and support to medical facilities in connection with the implementation of new electronic recordkeeping systems.  Defendants employ consultants, such as Plaintiffs, who perform such training and support services for MedFirst throughout the United States.

29.     Defendants' financial results are significantly driven by the number of consultants performing training and support services for MedFirst's customers, and the fees that Defendants charge the customers for these services.

30.     Plaintiff Jill Kiley was employed as a consultant by Defendants at Sky Lakes Medical Center in Klamath Falls, Oregon between August 2015 and September 2016; at Forsythe Medical Center in Winston-Salem, North Carolina in October 2016; and at Allegheny Health Network in Pittsburgh, Pennsylvania from September to December 2014.

31.     Plaintiff Marcus Payne was employed as a consultant by Defendants at Rogue Regional Medical Center in Medford, Oregon; Sky Lakes medical Center in Klamath Falls, Oregon; and at Deaconess Health Systems in Vincennes, Indiana between 2013 and 2016.

32.     Plaintiff Brittney Relliford was employed as a consultant by Defendants at Einstein Hospital in Philadelphia, Pennsylvania; MedStar Health in Baltimore, Maryland; Albany Medical Center in Albany, New York; Henry Ford Health System in Jackson, Michigan; Spectrum Health in Grand Rapids, Michigan; St. Lupe Health System in Toledo, Ohio; MedStar in McLean, Virginia; and Texas Health in Dallas and Fort Worth, Texas between October 2016 and January 2018.

33.     Plaintiff Babatunde Olaseinde was employed as a consultant by Defendants at University of Chicago in Chicago, Illinois; Novant Health in Thomasville, North Carolina; Allegheny Health in Pittsburgh, Pennsylvania; and CentraState Medical Center in Freehold, New Jersey between June 2014 and December 2016.

34.     Plaintiff Robert Farley was employed as a consultant by Defendants at InterMountain Health in Provo, Utah, St. George, Utah and Murry, Utah; Riverton Hospital in Riverton, Utah; USA Children and Women's Hospital in Mobile, Alabama; Allegheny Health in Erie, Pennsylvania; Reid Hospital in Richmond, Indiana; and St. Mary's Regional Medical Center in Freeport, Maine between April 2016 and May 2018.

35.     During their time working for Defendants, Plaintiffs provided basic training and support to healthcare staff on how to use new electronic record-keeping systems for medical records.

36.     Defendants improperly, wrongfully and illegally classified Plaintiffs and other consultants as independent contractors, when the economic reality of their position is that of an employee, and Defendants retain the right of control, and, in fact, actually do control the work of the consultants.

37.     Plaintiffs and Class Members routinely worked in excess of forty (40) hours per workweek but, as a result of this misclassification, Defendants did not pay them any overtime compensation as required by the FLSA, and Oregon, Pennsylvania, North Carolina, New York, Maryland, Ohio, New Jersey, Illinois, Maine and Utah state law.

**Plaintiffs and Class Members Routinely Worked in Excess of Forty Hours a Week**

38.     Plaintiffs and Class Members usually worked approximately twelve (12) hours per day, seven (7) days per week during their project assignments.

39.     For example, in most weeks she worked for Defendants, Plaintiff Kiley regularly worked 12 hours a day, 7 days a week, plus "on-call time" and was only paid a straight hourly rate – and only for her billed hours.

40.     Although Plaintiffs and Class Members frequently are required, permitted or encouraged to work more than forty (40) hours per week, they do not receive pay of one and one-half (1 ½) times their regular rate for hours worked in excess of forty (40) hours per week, as required by the FLSA, and Oregon, Pennsylvania North Carolina, New York, Maryland, Ohio, New Jersey, Illinois, Maine and Utah state law.

41.     Instead, Plaintiffs and Class Members are paid a straight hourly rate for all hours that they worked, regardless of whether they work more than forty hours in a week.

**Plaintiffs and Class Members are Employees of Defendants**

42.     Work performed by Plaintiffs and Class Members is an integral part of Defendants' business.  Defendants are in the business of providing information technology services to the healthcare industry. Plaintiffs and Class Members provide information technology support and training to Defendants' clients.

43.     Defendants provide training to Plaintiffs and Class Members, which they use to provide basic information technology support to MedFirst's clients.

44.     Plaintiffs and Class Members are unable to perform services for any other company during their time working for MedFirst due to their schedule.

45.     Plaintiffs are required by Defendants to sign "restrictive covenant" agreements that prohibited them from working for Defendants' competitors in the "go-live training and consulting industry" during and for a year after their last engagement with Defendants.

9

46.     Plaintiffs and Class Members work for one MedFirst client continuously at a time. For example, Plaintiff Kiley worked at the same hospital in Klamath Falls, Oregon continuously for 13 months.

47.     Plaintiffs and Class Members have little or no authority to refuse or negotiate Defendants' rules and policies; they must comply or risk discipline and/or termination.

48.     Defendants instruct Plaintiffs and Class Members on how to do their work and dictates the details of the performance of their jobs.  Plaintiffs and Class Members have no control over what prices to charge Defendants' clients, or the scheduling of shifts. All negotiations over the cost and details of the work are done directly between Defendants and the third-party client.  Defendants require Plaintiffs and Class Members to perform in accordance with MedFirst's policies, manuals, standard operating procedures and the third-party client requirements, and require Plaintiffs and Class Members to work the entire project from inception to conclusion (or until such time as Defendants' unilaterally to terminate their particular assignment).

49.     Plaintiffs and Class Members have to request MedFirst's approval for time off. MedFirst has final discretion to grant or deny such requests.

50.     Defendants pay Plaintiffs and Class Members a fixed hourly rate, which they are not able to negotiate.

**Plaintiffs and Class Members are Not Exempt as "Computer Employees" Under the FLSA**

51.     Plaintiffs and Class Members provide support and training to hospital staff in connection with electronic keeping systems. Plaintiffs have no specialized training or certification in computer programing, software documentation and analysis, or testing of computer systems or programs. Plaintiffs and Class Members were not working as nor were they

similarly skilled as computer systems analysts, computer programmers, or software engineers, as defined in 29 C.F.R. § 541.400(a).

52.     Plaintiffs' and Class Members' primary duties consist of training and aiding healthcare staff with using the new recordkeeping software. This support is also known as "at the elbow". Plaintiffs' and Class Members' primary duties do not include the higher skills of the "application of systems analysis techniques and procedures," pursuant to 29 C.F.R. § 541.400(b)(1). Plaintiffs and Class Members do not analyze, consult or determine hardware, software programs or any system functional specifications for MedFirst's clients.  *See id.*

53.     Plaintiffs and Class Members do not consult with MedFirst's customers to determine or recommend hardware specifications. Plaintiffs and Class Members do not design, develop, document, analyze, create, test or modify a computer system or program, as defined in 29 C.F.R. § 541.400(b)(2).

54.     While Plaintiffs' and Class Members' "work is highly dependent upon, or facilitated by, the use of computers and computer software programs;" they are not "primarily engaged in computer systems analysis and programming." U.S. Dept. of Labor, Wage & Hour Div., Fact Sheet #17E: Exemption for Employees in Computer-Related Occupations under the Fair Labor Standards Act (FLSA). Plaintiffs and Class Members provide support and training in using electronic recordkeeping systems to MedFirst's clients.

55.     Plaintiffs and Class Members are not paid a minimum guaranteed salary. Instead, Plaintiffs and Class Members are paid hourly and paid only for the time actually billed.

**Defendants Willfully Violated the FLSA**

56.     Defendants had no reasonable basis to believe that Plaintiffs and the FLSA Class Members were exempt from the requirements of the FLSA.  Rather, Defendants either knew or

acted with reckless disregard of clearly applicable FLSA provisions in failing to pay overtime to Plaintiffs and the FLSA Class Members. Such willfulness is demonstrated by, or may be reasonably inferred from, Defendants' actions and/or failures to act, including the following:

    a.   At all times relevant hereto, Defendants maintained payroll records which reflected the fact that Plaintiffs and the FLSA Class Members did, in fact, regularly work in excess of 40 hours per week, and thus, Defendants had actual knowledge that Plaintiffs and the FLSA Class Members worked overtime;

    b.   At all times relevant hereto, Defendants knew that they did not pay Plaintiffs and the FLSA Class Members one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week;

    c.   As evidenced by their own job offer letters, agreements, and training materials for consultants, at all times relevant hereto, Defendants were aware of the nature of the work performed by their consultants, and, in particular, that such individuals worked exclusively at-the-elbow of healthcare workers employed by Defendants' clients, providing basic training and support;

    d.   As evidenced by their own job offer letters, agreements, and training materials for consultants, Defendants knew and understood that they were subject to the wage requirements of the FLSA as "employers" under 29 U.S.C. § 203(d).

    e.   At all times relevant hereto, Defendants were aware that their consultants did not engage in: (i) computer systems analysis, computer programming, or software engineering, as defined in 29 C.F.R. § 541.400(a); (ii) the application of systems analysis techniques and procedures, as defined in 29 C.F.R. § 541.400(b)(1); or (iii) the design, development, analysis, creation, testing or modification of a computer

system or program, as defined in 29 C.F.R. § 541.400(b)(2);

f.   Defendants lacked any reasonable or good faith basis to believe that their consultants fell within any exemption from the overtime requirements of the FLSA. Rather, Defendants deliberately misclassified their consultants as independent contractors in order to avoid paying them overtime compensation to which they were entitled;

g.   At all times relevant hereto, Defendants were aware that they would (and, in fact did) benefit financially by failing to pay Plaintiff and the FLSA Class one and one-half (1 ½) times their regular pay rate for hours worked in excess of forty (40) hours per week; and

h.   Thus, Defendants had (and have) a strong financial motive to violate the requirements of the FLSA by misclassifying their consultants as independent contractors.

57.   Based upon the foregoing, Defendants were cognizant that, or recklessly disregarded whether, their conduct violated the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

58.   Plaintiffs bring Count I of this action pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

59.   Plaintiffs desire to pursue their FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

60.   Plaintiffs and the FLSA Class Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or worked pursuant to Defendants' previously described common business and compensation practices as

described herein, and, as a result of such practices, have been misclassified as independent contractors and have not been paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek.  Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

61.     Specifically, Defendants misclassified Plaintiffs and the FLSA Class Members as independent contractors and paid them a set hourly rate for all hours worked.

62.     The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through MedFirst's business and human resources records.

63.     Defendants employ many FLSA Class Members throughout the United States. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

## OREGON CLASS ACTION ALLEGATIONS

64.     Plaintiffs Kiley and Payne bring Count II of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Oregon Class, as defined above.

65.     The members of the Oregon Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Oregon Class.

66.     Plaintiffs Kiley and Payne will fairly and adequately represent and protect the interests of the Oregon Class because there is no conflict between the claims of Plaintiffs Kiley and Payne and those of the Oregon Class, and Plaintiffs Kiley and Payne's claims are typical of

the claims of the Oregon Class.  Plaintiffs' counsel are competent and experienced in litigating

class actions and other complex litigation matters, including wage and hour cases like this one.

67.    There are questions of law and fact common to the proposed Oregon Class, which

predominate over any questions affecting only individual Class Members, including, without

limitation: whether Defendants have violated and continue to violate Oregon law through their

policy or practice of misclassifying consultants as independent contractors, and thereby failing to

pay them overtime compensation.

68.    Plaintiffs Kiley and Payne's claims are typical of the claims of the Oregon Class

in the following ways: 1) Plaintiffs Kiley and Payne are members of the Oregon Class; 2)

Plaintiffs Kiley and Payne's claims arise out of the same policies, practices and course of

conduct that form the basis of the claims of the Oregon Class; 3) Plaintiffs Kiley and Payne's

claims are based on the same legal and remedial theories as those of the Oregon Class and

involve similar factual circumstances; 4) there are no conflicts between the interests of Plaintiffs

Kiley and Payne and the Oregon Class Members; and 5) the injuries suffered by Plaintiffs Kiley

and Payne are similar to the injuries suffered by the Oregon Class Members.

69.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions

of law and fact common to the Oregon Class predominate over any questions affecting only

individual Class Members.

70.    Class action treatment is superior to the alternatives for the fair and efficient

adjudication of the controversy alleged herein. Such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions

would entail.  No difficulties are likely to be encountered in the management of this class action

that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Oregon Class is readily identifiable from Defendants' own records.  Prosecution of separate actions by individual members of the Oregon Class would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants.

71.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.  Furthermore, the amounts at stake for many of the Oregon Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.  Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs Kiley and Payne and the Oregon Class. Plaintiffs Kiley and Payne envision no difficulty in the management of this action as a class action.  These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt out of it pursuant to Fed. R. Civ. P. 23(c)(2), for the purpose of adjudicating their claims for overtime compensation.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

72.     Plaintiffs Kiley, Relliford and Olaseinde bring Count III of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Pennsylvania Class defined above.

73.     The members of the Pennsylvania Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Pennsylvania Class.

74.     Plaintiffs Kiley, Relliford and Olaseinde will fairly and adequately represent and

16

protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiffs Kiley, Relliford and Olaseinde and those of the Pennsylvania Class, and Plaintiffs Kiley, Relliford and Olaseinde's claims are typical of the claims of the Pennsylvania Class. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

75.     There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Pennsylvania law through its policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

76.     Plaintiffs Kiley, Relliford and Olaseinde's claims are typical of the claims of the Pennsylvania Class Members in the following ways, without limitation: (a) Plaintiffs Kiley, Relliford and Olaseinde are members of the Pennsylvania Class; (b) Plaintiffs Kiley, Relliford and Olaseinde's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Pennsylvania Class; (c) Plaintiffs Kiley, Relliford and Olaseinde's claims are based on the same legal and remedial theories as those of the Pennsylvania Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs Kiley, Relliford and Olaseinde and the Pennsylvania Class Members; and (e) the injuries suffered by Plaintiff Kiley, Relliford and Olaseinde are similar to the injuries suffered by the Pennsylvania Class Members.

77.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual Class Members.

78.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Pennsylvania Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying adjudications with respect to individual Pennsylvania Class Members that would establish incompatible standards of conduct for Defendants.

79.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Pennsylvania Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

80.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs Kiley, Relliford and Olaseinde and the Pennsylvania Class. Plaintiffs Kiley, Relliford and Olaseinde envision no difficulty in the management of this action as a class action.

## NORTH CAROLINA CLASS ACTION ALLEGATIONS

81.     Plaintiff Kiley brings Count IV of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the North Carolina Class defined above.

82.     The members of the North Carolina Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the North Carolina Class.

83.     Plaintiff Kiley will fairly and adequately represent and protect the interests of the North Carolina Class because there is no conflict between the claims of Plaintiff Kiley and those of the North Carolina Class, and Plaintiff Kiley's claims are typical of the claims of the North Carolina Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

84.     There are questions of law and fact common to the proposed North Carolina Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate North Carolina law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

85.     Plaintiff Kiley's claims are typical of the claims of the North Carolina Class Members in the following ways, without limitation: (a) Plaintiff Kiley is a member of the North Carolina Class; (b) Plaintiff Kiley's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the North Carolina Class; (c) Plaintiff Kiley's claims are based on the same legal and remedial theories as those of the North Carolina Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Kiley and the North Carolina Class Members; and (e) the injuries suffered by Plaintiff Kiley are similar to the injuries suffered by the North Carolina Class Members.

86.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the North Carolina Class predominate over any questions affecting

only individual Class Members.

87.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The North Carolina Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the North Carolina Class would create the risk of inconsistent or varying adjudications with respect to individual North Carolina Class Members that would establish incompatible standards of conduct for Defendants.

88.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the North Carolina Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

89.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Kiley and the North Carolina Class. Plaintiff Kiley envisions no difficulty in the management of this action as a class action.

## NEW YORK CLASS ACTION ALLEGATIONS

90.     Plaintiff Relliford brings Count V of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the New York Class defined above.

91.     The members of the New York Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the New York Class.

92.     Plaintiff Relliford will fairly and adequately represent and protect the interests of the New York Class because there is no conflict between the claims of Plaintiff Relliford and those of the New York Class, and Plaintiff Relliford's claims are typical of the claims of the New York Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

93.     There are questions of law and fact common to the proposed New York Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate New York law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

94.     Plaintiff Relliford's claims are typical of the claims of the New York Class Members in the following ways, without limitation: (a) Plaintiff Relliford is a member of the New York Class; (b) Plaintiff Relliford's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New York Class; (c) Plaintiff Relliford's claims are based on the same legal and remedial theories as those of the New York Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Relliford and the New York Class Members; and (e) the injuries suffered by Plaintiff Relliford are similar to the injuries suffered by the New York Class Members.

95.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions affecting only

individual Class Members.

96.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New York Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual New York Class Members that would establish incompatible standards of conduct for Defendants.

97.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the New York Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

98.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Relliford and the New York Class. Plaintiff Relliford envisions no difficulty in the management of this action as a class action.

## MARYLAND CLASS ACTION ALLEGATIONS

99.     Plaintiff Relliford brings Count VI of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Maryland Class defined above.

100.    The members of the Maryland Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Maryland Class.

101.    Plaintiff Relliford will fairly and adequately represent and protect the interests of the Maryland Class because there is no conflict between the claims of Plaintiff Relliford and those of the Maryland Class, and Plaintiff Relliford's claims are typical of the claims of the Maryland Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

102.    There are questions of law and fact common to the proposed Maryland  Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Maryland law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

103.    Plaintiff Relliford's claims are typical of the claims of the Maryland Class Members in the following ways, without limitation: (a) Plaintiff Relliford is a member of the Maryland Class; (b) Plaintiff Relliford's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Maryland Class; (c) Plaintiff Relliford's claims are based on the same legal and remedial theories as those of the Maryland Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Relliford and the Maryland Class Members; and (e) the injuries suffered by Plaintiff Relliford are similar to the injuries suffered by the Maryland Class Members.

104.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Maryland Class predominate over any questions affecting only

individual Class Members.

105.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Maryland Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Maryland Class would create the risk of inconsistent or varying adjudications with respect to individual Maryland Class Members that would establish incompatible standards of conduct for Defendants.

106.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Maryland Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

107.    Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Relliford and the Maryland Class. Plaintiff Relliford envisions no difficulty in the management of this action as a class action.

## <u>OHIO CLASS ACTION ALLEGATIONS</u>

108.    Plaintiff Relliford brings Count VII of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Ohio Class defined above.

109.     The members of the Ohio Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Ohio Class.

110.     Plaintiff Relliford will fairly and adequately represent and protect the interests of the Ohio Class because there is no conflict between the claims of Plaintiff Relliford and those of the Ohio Class, and Plaintiff Relliford's claims are typical of the claims of the Ohio Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

111.     There are questions of law and fact common to the proposed Ohio Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Ohio law through its policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

112.     Plaintiff Relliford's claims are typical of the claims of the Ohio Class Members in the following ways, without limitation: (a) Plaintiff Relliford is a member of the Ohio Class; (b) Plaintiff Relliford's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Ohio Class; (c) Plaintiff Relliford's claims are based on the same legal and remedial theories as those of the Ohio Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Relliford and the Ohio Class Members; and (e) the injuries suffered by Plaintiff Relliford are similar to the injuries suffered by the Ohio Class Members.

113.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Ohio Class predominate over any questions affecting only

individual Class Members.

114.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Ohio Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Ohio Class would create the risk of inconsistent or varying adjudications with respect to individual Ohio Class Members that would establish incompatible standards of conduct for Defendants.

115.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Ohio Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

116.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Relliford and the Ohio Class. Plaintiff Relliford envisions no difficulty in the management of this action as a class action.

## NEW JERSEY CLASS ACTION ALLEGATIONS

117.     Plaintiff Olaseinde brings Count VIII of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the New Jersey Class defined above.

118.     The members of the New Jersey Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the New Jersey Class.

119.     Plaintiff Olaseinde will fairly and adequately represent and protect the interests of the New Jersey Class because there is no conflict between the claims of Plaintiff Olaseinde and those of the New Jersey Class, and Plaintiff Olaseinde's claims are typical of the claims of the New Jersey Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

120.     There are questions of law and fact common to the proposed New Jersey Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continues to violate New Jersey law through its policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

121.     Plaintiff Olaseinde's claims are typical of the claims of the New Jersey Class Members in the following ways, without limitation: (a) Plaintiff Olaseinde is a member of the New Jersey Class; (b) Plaintiff Olaseinde's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New Jersey Class; (c) Plaintiff Olaseinde's claims are based on the same legal and remedial theories as those of the New Jersey Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Olaseinde and the New Jersey Class Members; and (e) the injuries suffered by Plaintiff Olaseinde are similar to the injuries suffered by the New Jersey Class Members.

122.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New Jersey Class predominate over any questions affecting only

individual Class Members.

123.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New Jersey Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the New Jersey Class would create the risk of inconsistent or varying adjudications with respect to individual New Jersey Class Members that would establish incompatible standards of conduct for Defendants.

124.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the New Jersey Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

125.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Olaseinde and the New Jersey Class. Plaintiff Olaseinde envisions no difficulty in the management of this action as a class action.

## ILLINOIS CLASS ACTION ALLEGATIONS

126.     Plaintiff Olaseinde brings Count IX of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Illinois Class defined above.

127.     The members of the Illinois Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Illinois Class.

128.     Plaintiff Olaseinde will fairly and adequately represent and protect the interests of the Illinois Class because there is no conflict between the claims of Plaintiff Olaseinde and those of the Illinois Class, and Plaintiff Olaseinde's claims are typical of the claims of the Illinois Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

129.     There are questions of law and fact common to the proposed Illinois Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Illinois law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

130.     Plaintiff Olaseinde's claims are typical of the claims of the Illinois Class Members in the following ways, without limitation: (a) Plaintiff Olaseinde is a member of the Illinois Class; (b) Plaintiff Olaseinde's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New Jersey Class; (c) Plaintiff Olaseinde's claims are based on the same legal and remedial theories as those of the Illinois Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Olaseinde and the Illinois Class Members; and (e) the injuries suffered by Plaintiff Olaseinde are similar to the injuries suffered by the Illinois Class Members.

131.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Illinois Class predominate over any questions affecting only

individual Class Members.

132.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Illinois Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Illinois Class would create the risk of inconsistent or varying adjudications with respect to individual Illinois Class Members that would establish incompatible standards of conduct for Defendants.

133.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Illinois Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

134.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Olaseinde and the Illinois Class. Plaintiff Olaseinde envisions no difficulty in the management of this action as a class action.

## MAINE CLASS ACTION ALLEGATIONS

135.     Plaintiff Farley brings Count X of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Maine Class defined above.

136.     The members of the Maine Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Maine Class.

137.     Plaintiff Farley will fairly and adequately represent and protect the interests of the Maine Class because there is no conflict between the claims of Plaintiff Farley and those of the Maine Class, and Plaintiff Farley's claims are typical of the claims of the Maine Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

138.     There are questions of law and fact common to the proposed Maine Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Maine law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

139.     Plaintiff Farley's claims are typical of the claims of the Maine Class Members in the following ways, without limitation: (a) Plaintiff Farley is a member of the Maine Class; (b) Plaintiff Farley's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Maine Class; (c) Plaintiff Farley's claims are based on the same legal and remedial theories as those of the Maine Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Farley and the Maine Class Members; and (e) the injuries suffered by Plaintiff Farley are similar to the injuries suffered by the Maine Class Members.

140.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Maine Class predominate over any questions affecting only

individual Class Members.

141.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Maine Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Maine Class would create the risk of inconsistent or varying adjudications with respect to individual Maine Class Members that would establish incompatible standards of conduct for Defendants.

142.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Maine Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

143.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Farley and the Maine Class. Plaintiff Farley envisions no difficulty in the management of this action as a class action.

## UTAH CLASS ACTION ALLEGATIONS

144.     Plaintiff Farley brings Count XI of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the Utah Class defined above.

145.     The members of the Utah Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Utah Class.

146.     Plaintiff Farley will fairly and adequately represent and protect the interests of the Utah Class because there is no conflict between the claims of Plaintiff Farley and those of the Utah Class, and Plaintiff Farley's claims are typical of the claims of the Utah Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

147.     There are questions of law and fact common to the proposed Utah Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Utah law through their policy or practice of misclassifying consultants as independent contractors, and thereby failing to pay them overtime compensation.

148.     Plaintiff Farley's claims are typical of the claims of the Utah Class Members in the following ways, without limitation: (a) Plaintiff Farley is a member of the Utah Class; (b) Plaintiff Farley's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Utah Class; (c) Plaintiff Farley's claims are based on the same legal and remedial theories as those of the Utah Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff Farley and the Utah Class Members; and (e) the injuries suffered by Plaintiff Farley are similar to the injuries suffered by the Utah Class Members.

149.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Utah Class predominate over any questions affecting only

individual Class Members.

150.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Utah Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Utah Class would create the risk of inconsistent or varying adjudications with respect to individual Utah Class Members that would establish incompatible standards of conduct for Defendants.

151.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Utah Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

152.     Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff Farley and the Utah Class. Plaintiff Farley envisions no difficulty in the management of this action as a class action.

**COUNT I**
**VIOLATION OF THE FLSA**
**(ON BEHALF OF PLAINTIFFS AND THE FLSA CLASS MEMBERS)**

153.     All previous paragraphs are incorporated as though fully set forth herein.

154.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

155.    The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee..." 29 U.S.C. § 203(d).

156.    Defendants are subject to the wage requirements of the FLSA because Defendants are "employers" under 29 U.S.C. § 203(d).

157.    At all relevant times, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

158.    During all relevant times, Plaintiffs and FLSA Class Members were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

159.    Plaintiffs and the FLSA Class Members are not exempt from the requirements of the FLSA.

160.    Plaintiffs and the FLSA Class Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1).

161.    Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the FLSA Class Members for all their overtime hours worked by misclassifying Plaintiffs and the FLSA Class as independent contractors, thereby exempting them from the requirements of the FLSA.

162.     Defendants knowingly failed to compensate Plaintiffs and the FLSA Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

163.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

164.     In violating FLSA, on information and belief, Defendants did have any good faith basis to rely on any legal opinion or advice to the contrary.

**<u>COUNT II</u>**
**<u>Violation of ORS c. 652 and 653</u>**
**(On Behalf of Plaintiffs Kiley and Payne and the Oregon Class)**

165.     Defendants have improperly classified consultants as independent contractors, thereby failing to provide them with overtime compensation as required by Oregon law.

166.     While consultants working for MedFirst routinely work in excess of 40 hours a week, they are paid a straight hourly rate for all hours worked.

167.     On March 29, 2017, Plaintiffs Kiley and Payne sent written notice of unpaid wages to Defendant pursuant to ORS 652.140 and 652.150. Defendants did not pay Plaintiffs Kiley and Payne any unpaid wages.

168.     In failing to pay Plaintiffs Kiley and Payne and other consultants overtime compensation, Defendants have violated the provisions of ORS 652.150.

169.     Plaintiffs Kiley and Payne are entitled to recover their unpaid overtime compensation as well as state penalties for Defendants' failure to pay all wages due at termination of their employment with Defendants.

36

170.    Pursuant to ORS 653.055 and ORS 652.150, Plaintiffs Kiley and Payne are entitled to recover state penalties equal to 240 hours at Plaintiffs Kiley and Payne's regular rate of pay for Defendant's failure to pay overtime wages.

171.    Pursuant to ORS 652.200; ORS 653.055; and ORS 652.610, Plaintiffs Kiley and Payne are also entitled to recover costs, disbursements, and attorney fees for prevailing in any portion of their claim for unpaid wages.

## COUNT III
### Violation of the Pennsylvania Minimum Wage Act
**(on Behalf of Plaintiffs Kiley, Relliford and Olaseinde and the Pennsylvania Class)**

172.    All previous paragraphs are incorporated as though fully set forth herein.

173.    The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

174.    MedFirst is subject to the overtime requirements of the PMWA because MedFirst is an employer under 43 P.S. § 333.103(g).

175.    During all relevant times, Plaintiffs Kiley, Relliford and Olaseinde and the Pennsylvania Class members were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

176.    Defendants' compensation scheme that is applicable to Plaintiffs Kiley, Relliford and Olaseinde and the Pennsylvania Class members failed to comply with either 43 P.S. § 333.104(c) or 34 Pa. Code § 231.41.

177.    The PMWA does not contain an exemption from overtime pay for any type of computer employees.  *See* 43 P.S. § 333.105.

178.    Defendants misclassified Plaintiffs Kiley, Relliford and Olaseinde and the Pennsylvania Class Members as independent contractors, and, as a result failed to compensate them at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 Pa. Code § 231.41.

179.    Pursuant to 43 P.S. § 333.113, employers, such as Defendants, who fail to pay an employee wages in conformance with the PMWA shall be liable to the employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT IV**
**Violation of NCWHA**
**(on Behalf of Plaintiff Kiley and the North Carolina Class)**

180.    Count IV arises from Defendants' policy of suffering or permitting Plaintiff Kiley and the North Carolina Class Members to work without timely paying all promised and earned wages for all hours worked in violation of N.C. Gen. Stat. §§ 95-25.6.

181.    Defendants violated N.C. Gen. Stat. §§ 95-25.6 by failing to pay Plaintiff Kiley and North Carolina Class Members all promised and earned wage payments on the employees' regular payday for all hours worked.

182.    Defendants' violation of the NCWHA was willful.

**COUNT V**
**Violation of the New York Minimum Wage Act**
**(on Behalf of Plaintiff Relliford and the New York Class)**

183.    Overtime compensation due to New York workers is governed by New York Labor Law ("NYLL"), N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

184.     NYLL requires that non-resident employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

185.     NYLL requires that resident employees be compensated for all hours worked in excess of forty-four (44) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed. *See* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

186.     Defendants are subject to the wage requirements of the NYLL because Defendants are "employers" under N.Y. LAB. LAW § 651(6).

187.     During all relevant times, Plaintiff Relliford and the New York Class are covered employees entitled to the above-described NYLL's protections. *See* N.Y. LAB. LAW § 651(5) and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.14.

188.     Plaintiff Relliford and the New York Class are not exempt from the requirements of the NYLL.

189.     Defendants are required by NYLL to pay Plaintiff Relliford and the New York Class time and one-half (1 ½) the regular rate of pay for any work in excess of forty (40) hours for non-residents and forty-four (44) hours for residents pursuant to N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

190.     Defendants violated Plaintiff Relliford's and the New York Class Members' rights by failing to pay them the legally required amount of overtime compensation at rates not less than one and one-half (1 ½) times the regular rate of pay their regular rate of pay to which they are entitled under N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

191.     Specifically, Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff Relliford and the New York Class for all their

overtime hours worked by misclassifying Plaintiff Relliford and the New York Class as independent contractors exempt from the requirements of the NYLL.

192.     In violating the NYLL, Defendants acted willfully and with reckless disregard of clearly applicable NYLL provisions.

## COUNT VI
## Maryland Wage and Hour Law and Maryland Wage Payment and Collection Law
### (on Behalf of Plaintiff Relliford and the Maryland Class)

193.     All previous paragraphs are incorporated as though fully set forth herein.

194.     The Maryland Wage and Hour Law ("MWHL") requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which they are employed. *See* Maryland Code, Labor and Employment Article ("LE") §§ 3-415 and 3-420.

195.     Defendants are subject to the overtime requirements of the MWHL because Defendants are employers under LE § 3-401.

196.     During all relevant times, Plaintiff Relliford and the Maryland Class members were covered employees entitled to the above-described MWHL's protections. *See* LE § 3-401.

197.     The Maryland Wage and Hour Law does not contain an exemption from overtime pay for any type of computer employees. LE § 3-415.

198.     Defendants failed to compensate Plaintiff Relliford and the Maryland Class members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of LE §§ 3-415 and 3-420.

199.     Defendants' failure and refusal to pay wages due as required by Maryland law was willful and intentional, was not the result of any bona fide dispute between Plaintiff

Relliford and Maryland Class Members and Defendant, and was not in good faith. As a consequence, Plaintiff Relliford and Maryland Class Members are entitled to recover, in addition to their wages, up to two (2) times the amount of the wages claimed as liquidated damages pursuant to L&E § 3-507.1, as well as reasonable attorney's fees and costs.

**COUNT VII**
**O.R.C. 4111.03**
**(on Behalf of Plaintiff Relliford and the Maryland Class)**

200.     Ohio Revised Code ("O.R.C.") § 4111.03 requires employers to pay employees overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek.

201.     At all relevant times, Defendants were "employers" within the meaning of O.R.C. § 4111.03.

202.     At all relevant times, Plaintiff Relliford and Ohio Class Members were "employees" covered by O.R.C. § 4111.03.

203.     Plaintiff Relliford and Ohio Class Members are not exempt from the overtime requirements of O.R.C. § 4111.03.

204.     Pursuant to O.R.C. § 4111.10, Defendants are liable to Plaintiff Relliford and Ohio Class members for the full amount of their unpaid overtime compensation, and for attorneys' fees and costs.

205.      Any agreement between Plaintiff Relliford and Ohio Class members and Defendants to work for less than the overtime wage rate is no defense to Claimants' action under O.R.C. § 4111.03.

## COUNT VIII
### Violation of New Jersey Minimum Wage Law
### (On Behalf of Plaintiff Olaseinde and the New Jersey Class)

206.    All previous paragraphs are incorporated as though fully set forth herein.

207.    N.J. Stat. Ann. § 34:11-56a4 provides that "Every employer shall pay to each of his employees wages at a rate of . . . 1 ½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week . . ."

208.    During all relevant times, Defendants were employers within the meaning of N.J. Stat. Ann. § 34:11-56a1.

209.    During all relevant times, Plaintiff Olasiende and the New Jersey Class members were covered employees entitled to the above-described protections. *See* N.J. Stat. Ann. § 34:11-56a1.

210.    Defendants failed to compensate Plaintiff Olaseinde and the New Jersey Class Members at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of N.J. Stat. Ann. § 34:11-56a4.

211.    Employers, such as Defendants, who fail to pay an employee wages in conformance with N.J. Stat. Ann. § 34:11-56a4 shall be liable to the employee for the wages that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages. *See* N.J.S.A. 34:11-56a25.

## COUNT IX
### Violation of Illinois Minimum Wage Law
### (On Behalf of Plaintiff Olaseinde and the Illinois Class)

212.    All previous paragraphs are incorporated as though fully set forth herein.

213.    Pursuant to 820 ILCS 105/4a, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his

42

employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed.

214.     During all relevant times, Defendants were employers within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105/3.

215.     During all relevant times, Plaintiff Olaseinde and the Illinois Class Members were covered employees within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105/3.

216.     Defendants failed to compensate Plaintiff Olaseinde and the Illinois Class Members at a rate of 1 1/2 times their regular compensation for hours worked in excess of 40 a week in violation of 820 ILCS 105/4a.

217.     Pursuant to 820 ILCS 105/12, Defendants are liable to Plaintiff Olaseinde and the Illinois Class Members for their unpaid overtime compensation, attorneys' fees, costs, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which the unpaid overtime wages remain unpaid.

**COUNT X**
**Violation of 26 M.R.S.A § 664**
**(On Behalf of Plaintiff Farley and the Maine Class)**

218.    All previous paragraphs are incorporated as though fully set forth herein.

219.     During all relevant times, Defendants were employers within the meaning of 26 M.R.S.A § 663.

220.     During all relevant times, Plaintiff Farley and the Maine Class Members were covered employees within the meaning of 26 M.R.S.A § 663.

221.    Under 26 M.R.S.A § 664, an employee who works in excess of 40 hours a week must receive time and a half for the hours worked in excess of 40.

222.     26 M.R.S.A § 664 does not contain an exemption for computer employees.

43

223.     Pursuant to 26 M.R.S.A § 670, Defendants are liable to Plaintiff Farley and the Maine Class Members for unpaid overtime wages, liquidated damages, attorneys' fees and costs.

**COUNT XI**
**Violation of Utah Code Ann.**
**(On Behalf of Plaintiff Farley and the Utah Class)**

224.     All previous paragraphs are incorporated as though set forth fully herein.

225.     During all relevant times, Defendants were employers within the meaning of Utah Code Ann. § 34-28-2.

226.     Under Utah Code Ann. § 34-28-3(6), an employer may not withhold or divert part of an employee's wages in the absence of several specific, enumerated circumstances.

227.     Further, pursuant to Utah Code Ann. § 34-28-5(1)(a), when an employer separates an employee from the employer's payroll the unpaid wages of the employee become due immediately, and the employer shall pay the wages to the employee within 24 hours of the time of separation at the specified place of payment.

228.     Utah Code Ann. § 34-28-7 provides that "no provisions of this chapter can in any way be contravened or set aside by a mutual agreement unless the agreement is approved by the division."

229.     Pursuant to Utah Code Ann. § 34-28-9.5, Defendants are liable to plaintiff Farley and the Utah Class for their unpaid overtime wages as well as amount equal to 2.5% of the unpaid wages owed to the employees, assessed daily for 20 days after the day on which the court issues a final order or Defendants pay the wages due, whichever is shorter.

**WHEREFORE** Plaintiffs request that this Court enter the following relief:

    a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

    b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Class;

    c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Oregon Class;

    d. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Pennsylvania Class;

    e. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the North Carolina Class;

    f. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the New York Class;

    g. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Maryland Class;

    h. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Ohio Class;

    i. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the New Jersey Class;

    j. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Illinois Class;

    k. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Maine Class;

    l. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Utah Class;

    m. Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

    n. Liquidated damages to the fullest extent permitted under the law;

    o. Statutory penalties to the fullest extent permitted under the law;

    p. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

    q. Such other and further relief as this Court deems just and proper.

October 24, 2019

Respectfully Submitted,
JILL KILEY, MARCUS PAYNE,
BRITTNEY RELLIFORD,
BABATUNDE OLASEINDE, and
ROBERT FARLEY individually and on
behalf of all others similarly situated,

by their attorneys,

_/s/Olena Savytska_____
Harold Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

David A. Hughes (HUG038)
HARDIN & HUGHES, LLP
2121 14th St.
Tuscaloosa, AL 35401
(205) 344-6690
dhughes@hardinhughes.com

David M. Blanchard
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, Michigan 48104
(734) 929-4313
blanchard@bwlawonline.com

Sarah R. Schalman-Bergen
Alexandra K. Piazza
BERGER & MONTAGUE, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-3000
sschalman-bergen@bm.net
apiazza@bm.net

*Attorneys for Plaintiffs and the*
*Proposed Classes*

46

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2019, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

counsel for Defendant.

_/s/Olena Savytska_____
Olena Savytska