UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JILL KILEY, MARCUS PAYNE, BRITTNEY RELLIFORD, BABATUNDE OLASEINDE, and ROBERT FARLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDFIRST CONSULTING HEALTHCARE STAFFING, LLC and BRIAN SMITH,<br><br>Defendants. | Civil Action No. 2:17-cv-01756-RDP |

**JOINT MOTION FOR APPROVAL OF
FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**I.     INTRODUCTION**

Plaintiffs Jill Kiley, Marcus Payne, Brittney Relliford, Babatunde Olaseinde and Robert Farley (collectively, "Plaintiffs") and Defendants MedFirst Consulting Healthcare Staffing and Brian Smith ("Defendants") hereby jointly move the Court for an Order approving the Settlement Agreement. As set out further below, the settlement reached by the parties is fair and reasonable, and should be approved by the Court. Accordingly, the Parties respectfully request that the Court issue an Order: 1) approving Plaintiffs' attorneys' fees in the amount of one-third of the Gross Settlement Agreement and costs and expenses of $20,000.00; 2) approving incentive payments in the amount of $5,000.00 to Plaintiffs Jill Kiley and Marcus Payne, and

1

$3,000.00 each to Plaintiffs Brittney Relliford, Babatunde Olaseinde and Robert Farley; and 3) granting approval of the Settlement Agreement and dismissing this case with prejudice in accordance with the terms of the Settlement Agreement.

As described in greater detail below, the Settlement Agreement provides for a total payment of $450,000.00, which, after deductions for attorneys' fees, will be distributed on a *pro rata* basis to all Settlement Collective Members – that is, Plaintiffs and individuals who have filed opt-in consent forms in this case. Importantly, ***this is a non-reversionary settlement***. Thus, no portion of the Net Settlement Amount will be returned to Defendants. The entire Net Settlement Amount will be distributed to Settlement Collective Members in accordance with the formula set forth in Paragraph 18 of the Agreement. Pursuant to this formula, every Settlement Collective Member will receive a payment based on the total number of overtime hours he or she was paid at any time during the Relevant Time Period. The Settlement Agreement provides for a one-step approval process, which will efficiently resolve the pending case in a manner that benefits all Parties. As shown below, this Settlement is a fair and reasonable resolution of a *bona fide* dispute under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and it furthers the implementation of the FLSA in the workplace. Accordingly, the Motion for Settlement Approval should be granted.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Jill Kiley and Marcus Payne filed this case against Defendant MedFirst in the District Court for the District of Oregon on March 23, 2017, alleging overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. Dkt. 1. In August 2017, MedFirst moved to transfer the case to Alabama. Dkt. 42. In September 2017, Plaintiffs filed a Motion for Conditional Certification. Dkt. 50. After a hearing, the Court granted Plaintiffs' Motion for

Conditional Certification in part in February 2018, certifying a collective of "on-site trainers and personnel" who worked for MedFirst in the United States. Dkt. 103. More than 300 individuals opted into the case. Following the opt-in period, the Parties engaged in substantial written discovery, including information sheets completed by the opt-ins, and over 27,000 pages of documents produced by MedFirst. See Declaration of Harold Lichten ("Lichten Decl."), attached hereto as exhibit 2, ¶ 7.

In May 2019, Plaintiffs received data from MedFirst regarding projects worked by opt-ins during the time period covered by this case and presented Defendant with their preliminary damages calculations. Lichten Decl. ¶ 8. Shortly thereafter, in June 2019, the Parties agreed to engage in mediation in an attempt to resolve this case. Id. ¶ 9. A mediation session was scheduled for July 24, 2019. Id. ¶ Shortly before this mediation session, MedFirst's counsel informed Plainitffs' Counsel that MedFirst would no longer participate in the mediation, and that MedFirst was facing financial difficulties and would be unable to fund a settlement amount of the magnitude of that set out in Plaintiffs' demand. Id. ¶ 10. Plaintiffs subsequently moved to amend their Complaint to add Brian Smith, the sole owner of MedFirst, as a Defendant, and the Court granted this request on December 10, 2019. Dkt. 226.

In the following months, Defendants provided financial data for MedFirst and Mr. Smith to Plaintiffs. Lichten Decl. ¶ 12. On September 24, 2019, the Parties participated in a full-day mediation session with Fern Singer, which did not prove successful. Id. Starting in 2020, at the Court's urging, the Parties began working with mediator Edgar C. Gentle, III to attempt to reach a resolution of the case on behalf of the opt-ins, taking into account the financial position of MedFirst. Id. ¶ 13. Following months of negotiations by phone and email and Zoom Videoconference mediation sessions facilitated by Edgar C. Gentle, III on August 10, 2020 and

3

August 14, 2020, the Parties have agreed to settle Plaintiffs' and Opt-In Plaintiffs' claims.[1] Id. ¶ 14.

MedFirst has provided Plaintiffs' Counsel with data showing the dates, hourly rates, and number of hours worked by the Settlement Collective Members, which Plaintiffs' Counsel will use to calculate the Settlement Award due to each Settlement Collective Member. Settlement Agreement ¶¶ 8, 18; Lichten Decl. ¶ 8. After the Settlement Agreement is approved by the Court, and after the approval becomes final, MedFirst will make three payments toward the gross settlement amount. Settlement Agreement ¶ 14. Defendants shall pay $75,000 within 5 days after the Court enters an order approving the Settlement; $175,000 one year after the Court enters an order approving the Settlement; and $200,000 two years after the Court enters an order approving the Settlement. Id. After receiving each payment, Plaintiffs' Counsel will issue checks to Settlement Collective Members.[2] Id. at ¶¶ 18, 20. The claims that Settlement Collective Members will release as part of this Settlement Agreement are appropriately limited to claims arising out of or related to the payment of wages that accrued during the Settlement Collective Member's work as a consultant for MedFirst during the Relevant Time Period. Id. at ¶¶ 10(m), 11.

Distribution of the Net Settlement Amount will be based upon the following formula: The amount of $50 per Settlement Collective Member will be deducted from the Net Settlement

---

[1] The Parties' Settlement Agreement is attached hereto as Exhibit 1.

[2] The three sets of settlement checks will be in proportion to the payments made by MedFirst - the first set of checks will represent 16.67% of each Settlement Collective Member's award; the second check will represent 38.89% of each Settlement Collective Member's award; and the third check will represent 44.44% each Settlement Collective Member's award. Settlement Agreement ¶ 18(b)(iii).

Amount prior to the determination of *pro rata* individual settlement shares and allocated to each Settlement Collective Member so that each Settlement Collective Member receives at least $50 in exchange for their release in this Settlement Agreement. Id. at ¶ 18(a). In addition to this $50 payment, For each workweek during which the Settlement Collective Member worked more than forty (40) hours but did not receive overtime premium pay ("uncompensated overtime") at any time during the Relevant Time Period, he or she shall be eligible to receive a *pro rata* portion of the Net Settlement Amount based on the actual number of uncompensated overtime hours the Settlement Collective Member was paid. Each uncompensated overtime hour paid will be equal to one (1) settlement share. Id. at ¶ 18(b). The total number of settlement shares for all Settlement Collective Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per-share dollar figure. That figure will then be multiplied by each Settlement Collective Member's number of settlement shares to determine the Settlement Collective Member's Settlement Award. Id. Settlement Awards will be reported on an IRS Form 1099 and will not be subject to any withholding taxes. Id. at ¶ 19. No portion of the Net Settlement Amount will revert to MedFirst. See Id. ¶ 22.

### III.   ARGUMENT

#### 1.   Standard for Settlement Approval under the FLSA

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be...." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement. Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29

U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1353 (11th Cir. 1982).

When parties bring a proposed settlement of an FLSA claim before a court, the court must review the settlement to determine whether it is a "fair and reasonable resolution of a bona fide dispute" of the claims raised and if so, approve the parties' settlement agreement. Lynn's Food Stores, Inc., 679 F.2d at 1354–55; Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009) (same). In Silva, the Eleventh Circuit observed that the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" Id. 307 F. App'x at 351 (quoting Maddrix v. Dize, 153 F.2d 274, 275–76 (4th Cir. 1946)). "Therefore, in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*." Vergara v. Delicias Bakery & Restaurant, Inc., 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

If a settlement in an FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the Court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." Id. at 1354. The Court should approve the settlement if it is "reasonable to the employee and furthers implementation of the FLSA in the workplace." See Wingrove v. D.A. Techs., Inc., 2011 WL 7307626, at *1 (N.D. Ga. Feb. 11, 2011), report and recommendation adopted, 2011 WL 7324219 (N.D. Ga. Feb. 14, 2011) (quoting Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227, 1237 (M.D. Fla. 2010)). In this case, the Settlement Agreement meets the requirements for both

fairness and reasonableness with respect to the Plaintiffs and Settlement Collective Members and furthers the implementation of the FLSA.

    **2.**    **The Agreement is a Reasonable Compromise of a *Bona Fide* Dispute**

The Settlement Agreement reached reflects a reasonable compromise of a *bona fide* dispute related to the merits of Plaintiffs' FLSA claims. In this case, Plaintiffs contend that they were employees of MedFirst as a matter of economic reality, were not subject to any exemption from the overtime requirements of the FLSA, and were denied payment of overtime premiums in violation of the FLSA, 29 U.S.C. §201 *et seq*. MedFirst has maintained throughout the course of this litigation that it properly classified its consultants as independent contractors and properly compensated them for all hours worked. See Settlement Agreement ¶ 7; Lichten Decl. ¶ 17. Thus, significant legal and factual questions remain with respect to liability and damages under Plaintiffs' theory. See Kleeklamp v. Home Performance All., Inc., No. 2:17-cv-660, 2018 WL 2986687, at *1 (M.D. Fla. June 6, 2018), report and recommendation adopted, 2018 WL 2970982 (M.D. Fla. June 13, 2018) (holding that a *bona fide* dispute existed where the parties contested whether an exemption to the FLSA applied, the number of hours plaintiffs worked and whether liquidated damages were warranted). Although a *bona fide* dispute exists, the Parties believe that approval of the Settlement Agreement is in their best interests "given the disputed issues and the risks, time requirements, and unknown case duration inherent to litigation." Kleeklamp, 2018 WL 2986687, at *1. Thus, the *bona fide* dispute requirement is met in this case.

    **3.**    **The Monetary Terms and the Release Contained in the Settlement Agreement are Fair and Reasonable to Plaintiffs**

The factors used for evaluating the "fairness" of a settlement in a class action are used as a guideline for evaluating the fairness of an FLSA compromise. These factors include:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and

7

> the amount of discovery completed; (4) the probability of plaintiff's success on
> the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

Pessoa v. Countrywide Home Loans, Inc., No. 6:06-CV-1419ORLJGG, 2007 WL 1017577, at *3 (M.D. Fla. Apr. 2, 2007) (quoting Leverso v. SouthTrust Bank of AL., Nat. Assoc., 18 F.3d 1527, 1531 n. 6 (11th Cir. 1994)). "When considering these factors, the Court should keep in mind the strong presumption in favor of finding a settlement fair." Dail v. George A. Arab Inc., 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005) (internal quotes and citation omitted). The application of these six factors supports approval of the Settlement Agreement in this case.

First, the Settlement in this case is not the product of fraud or collusion. The Settlement follows years of contentious litigation, and is the result of arms' length negotiations between experienced counsel, facilitated by the exchange of information and detailed damages calculations. The Parties worked with two experienced mediators over many months to reach the Settlement Agreement.[3]

Second, the complexity, expense, and likely duration of litigation in this case supports approval of the Settlement. As noted above, this case has been pending for several years. In the absence of a settlement, the Parties would have faced the prospect of multiple motions for class certification, and possible separation of Plaintiffs' and the opt-ins state law claims into different cases. Lichten Decl. ¶ 21. The Parties would have also had to undertake time-consuming and expensive discovery, including depositions; brief FLSA decertification; brief summary judgment motions regarding the merits of the Plaintiffs' wage and hour claims; and possibly proceed to

---

[3] See Norris v. Lake Conway Landscaping of Orlando, Inc., No. 6:14-CV-1512-ORL-37, 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (finding that a "significant compromise" of claims was fair and reasonable where "Plaintiff was represented and counseled by experienced attorneys, he obtained discovery from Defendants, resolution of the action after trial is uncertain, and a well-respected mediator assisted the parties in reaching their settlement.").

trial and, potentially, post-trial appeal proceedings. Id. This continued litigation would have taken a number of years, and, in light of Defendants' financial condition, would have made the prospect of recovery highly uncertain. Id. ¶ 16. Thus, the complexity, expense and likely duration of legal proceedings weighs in favor of settlement approval.

Third, the stage of the proceedings and the amount of discovery completed in this case also supports approval. The Parties have engaged in substantial written discovery, including production of thousands of pages by MedFirst, and production of case information sheets by the opt-ins. The detailed payroll and time-keeping data provided by MedFirst in discovery has allowed Plaintiffs' Counsel to accurately determine the overtime hours worked and the compensation owed to each of the Plaintiffs and Opt-Ins in this case. See Dail, 391 F. Supp. 2d at 1147 ("[E]arly resolution of FLSA claims are encouraged and extensive discovery typically is unnecessary."). Thus, this factor supports approval of the Settlement.

Fourth, the probability of Plaintiffs' success on the merits likewise supports approval. See Dail, 391 F. Supp. 2d at 1147 ("Plaintiffs' probability of success on the merits was uncertain. The Court finds that settlement of the action in favor of certainty was fair and reasonable."). The Settlement reached by the Parties in this case reflects the fact that Defendants would have vigorously contested the merits of Plaintiffs' claims. MedFirst has maintained that it properly classified its consultants as independent contractors and has properly compensated them for all hours worked. Lichten Decl. ¶ 17. MedFirst has also contended that Plaintiffs and the Settlement Collective members are not similarly situated, and, as a result, conditional certification cannot be maintained. Id. ¶ 18. Defendants also claim that the shorter two-year statute of limitations under the FLSA would have been appropriate because any alleged violation of the FLSA was not willful, which would significantly limit the Settlement Collective Members' possible recovery in

this case. Id. ¶ 19. Were Plaintiffs successful in litigation, they would have sought liquidated damages in an amount equal to their unpaid overtime compensation. See 29 U.S.C. § 216 (permitting liquidated damages). However, Defendants would again contend that they acted in good faith and that liquidated damages were not appropriate. See Lichten Decl. ¶ 19; 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken "in good faith"). Given the abundance of disputed issues, as well as MedFirst's precarious financial condition, a settlement that requires Defendants to pay a significant portion of the unliquidated FLSA damages during a three-year statutory period, and provides Settlement Collective Members with certainty with respect to their alleged unpaid wages, is a fair and reasonable compromise of Plaintiffs' claims. Id. ¶¶ 15-16, 20.

Fifth, the range of possible recovery is another factor that favors approval. Plaintiffs' Counsel have calculated the potential unliquidated unpaid wage damages of the 308 Settlement Collective Members in connection with the settlement negotiations. Lichten Decl. ¶¶ 8, 22. The $450,000.00 settlement requires Defendants to pay almost 20% of the total, unliquidated damages that Plaintiffs could have recovered if they continued to pursue this action and been successful at trial. Id. ¶ 22. Most importantly, in the absence of this Settlement, any continued litigation would have likely pushed MedFirst into bankruptcy or closure – outcomes which would have severely limited, or altogether precluded, the Settlement Collective Members' recovery. Lichten Decl. ¶ 23. The Settlement ensures that Settlement Collective Members will receive compensation as quickly as practicable, with the first payment coming shortly after the Court's approval, and without the need for lengthy discovery, and the delay associated with motion practice, trial, and the possibility of appeal. The recovery to Plaintiffs and the Settlement Collective Members represents a fair and reasonable resolution of the dispute in this case, and

should be approved. See, e.g., Rankin v. Rots, No. 02-CV-71045, 2006 WL 1876538, at *4 (E.D. Mich. June 27, 2006) (finding settlement amount representing 18-46 percent of each plaintiff's total claimed damages reasonable as it was conceivable that plaintiffs could recover less at trial).

Sixth, the opinions of counsel also support approval. Plaintiffs' Counsel have significant experience in pursuing state wage and hour class and FLSA collective actions. At all relevant times during the lengthy lifetime of this case, Plaintiffs' Counsel have (and will continue to) aggressively and competently assert the interests of the Plaintiffs. Given Plaintiffs' Counsel's skill and experience in wage and hour litigation, their support for the Settlement should be given deference. Thus, all six factors support approval of the Settlement Agreement.

### 4. The Settlement Furthers the Implementation of the FLSA in the Workplace

The Settlement Agreement does not contain any provision that contravenes the purpose of the FLSA, and therefore, it does not impair implementation of the FLSA in the workplace. Courts evaluating FLSA settlements have recognized that certain settlement provisions are contrary to the policies implemented by the FLSA. Some of these provisions are discussed below.

First, the Settlement Agreement does not contain any confidentiality provisions, which courts have found to frustrate the implementation of the FLSA. See Dees, 706 F. Supp. 2d at 1242 (observing that "a confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the "private—public" rights[] granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute.") (footnote omitted).

Second, the Settlement Agreement expressly prohibits retaliation by MedFirst against any Plaintiffs or Opt-Ins. See Settlement Agreement ¶ 24. Third, the Settlement Agreement does not contain a "no-reemployment" provision, which is disfavored by the courts. See Sides v.

11

Advanced Disposal Servs. Nat'l Accounts, Inc., 2016 WL 1317667, at *3 (M.D. Fla. Mar. 15, 2016), report and recommendation adopted, 2016 WL 1305287 (M.D. Fla. Apr. 4, 2016) (stating: "if an agreement to settle a FLSA overtime claim includes a no-reemployment provision, many judges will strike the provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights.") (citation omitted).

Finally, the Settlement Agreement does not contain any provision that would constitute a prospective waiver of any of the Plaintiffs' or Opt-Ins' FLSA rights. See Dees, 706 F. Supp. 2d at 1243 (quoting Lynn's Food Stores, Inc., 679 F.2d at 1352) ("Because 'FLSA rights cannot be abridged by contract or otherwise waived[]' an employee may not prospectively waive his right to a minimum wage or to overtime compensation.") (internal citation omitted). Rather, the Released Claims are limited to claims under the FLSA and state and local wage and hour laws that accrued while the Settlement Collective Members worked for MedFirst, and accompanying claims for attorney's fees and costs. Settlement Agreement ¶¶ 10(m), 11. Accordingly, the Settlement Agreement does not frustrate the implementation of the FLSA in the workplace and should be approved by the Court.

### 5. Service Awards to the Plaintiffs Should be Approved by the Court

The Settlement Agreement provides for service awards in the amount of $5,000.00 each to Plaintiffs Jill Kiley and Marcus Payne, and 3,000.00 each to Plaintiffs Brittney Relliford, Babtunde Olaseinde and Robert Farley. Courts in this Circuit and around the country have "awarded incentive fees to named plaintiffs who establish that they faced substantial risks by participating in the lawsuit and incurred actual expenses during the litigation." Heath v. Hard Rock Cafe Intern. (STP), Inc., 6:10-CV-344-ORL-28, 2011 WL 5877506, at *5 (M.D. Fla. Oct. 28, 2011), report and recommendation adopted, 6:10-CV-344-ORL-28, 2011 WL 5873968 (M.D. Fla. Nov. 23, 2011) (approving $1,000.00 payment in FLSA case; see also Su v.

12

Electronic Arts, Inc., No. 6:05–cv–131–Orl–28JGG, 2006 WL 4792780, at * 5 (M.D. Fla. Aug.29, 2006) (awarding $10,000.00 to the named plaintiff in an FLSA case who feared that his career would be adversely affected as a result of litigation against his former employer and who used vacation days to travel to hearings). The considerations behind an incentive payments apply particularly strongly in the employment context. As another district court recognized, incentive payments "are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y.2005).

The incentive payments requested by Plaintiffs in this case are appropriate in light of their involvement in the case and the risks they took in coming forward to represent their fellow workers. Plaintiffs Jill Kiley and Marcus Payne were the two original plaintiffs who brought this action on behalf of other consultants who worked for MedFirst. Lichten Decl. ¶ 25. They have been involved in the case since for several years, providing their pay records and contracts and helping Plaintiffs' Counsel develop their theories of liability and damages models. Id. Plaintiffs Relliford, Olaseinde and Farley were also instrumental to the case, providing information regarding MedFirst's practices on different projects, and serving as the faces of several state law classes. Id. ¶ 26. Plaintiffs provided significant, ongoing assistance to Plaintiffs' Counsel as they drafted and amended the Complaint, moved for conditional certification, reviewed Defendants' document production, prepared their damages model and prepared for mediation, and the modest incentive awards requested here are consistent with incentive awards in other cases and fairly

recognizes the services that they have performed in advancing the Settlement Collective Members' interests and the time that Plaintiffs dedicated to the lawsuit. Id. ¶¶ 26-27.

### 6. Attorneys' Fees and Costs for Plaintiffs' Counsel Should be Approved

Finally, Plaintiffs' Counsel request approval of fees in the amount of one-third of the Gross Settlement Amount, or $150,000.00, as well as out-of-pocket costs in the amount of $20,000.00,[4] to which Defendants consent. Under the FLSA, Plaintiffs' Counsel are entitled to reasonable attorneys' fees and costs to compensate them for their work in recovering unpaid wages under the FLSA. See 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009)(unpublished) (quoting Maddrix v. Dize, 153 F.2d 274, 275–76 (4th Cir. 1946)) ("The language of the statute contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'"). The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Silva, 2009 WL 73164 at *2.

Courts in this Circuit typically use the lodestar approach when evaluating the fairness of an attorneys' fee request in an FLSA settlement. See, e.g., Vinson v. Critter Control, Inc., CIV.A. 11-0714-KD-N, 2012 WL 6737508, at *3 (S.D. Ala. Dec. 28, 2012) ("In FLSA actions, this Court begins with the lodestar analysis"); Longcrier v. HL-A Co., Inc., CIV.A. 08-0011-WSC, 2009 WL 971297, at *1 (S.D. Ala. Apr. 8, 2009) ("[I]n scrutinizing the reasonableness of an

---

[4] Although Plaintiffs' Counsel recognize that their actual costs are higher than $20,000.00, Plaintiffs will not seek additional amounts above $20,000.00.

FLSA attorney's fee award, courts have utilized the time-honored lodestar method."); Silva v. Miller, 547 F.Supp.2d 1299, 1301-02 (S.D. Fla. 2008) (awarding a lodestar amount for attorneys' fees in FLSA case). Plaintiffs' requested fee award is proper under the lodestar analysis, and is a small fraction of their actual lodestar accrued over the lifetime of this case. Plaintiffs' Counsel have spent a combined total of 1,128.3 hours on this case, for a collective lodestar of $392,181.00 Lichten Decl. ¶ 30; Declaration of Sarah Schalman-Bergen ("Schalman-Bergen Decl."), attached hereto as Exhibit 3, ¶ 13; Declaration of David Blanchard ("Blanchard Decl."), attached hereto as Exhibit 4, ¶¶ 13-14. The requested fee award of $150,000.00 is a mere 38% of this lodestar, and appropriately compensates Plaintiffs' Counsel for the work performed, the time invested, and the result reached in this case, and should be approved. Plaintiffs' request for $20,000.00 in costs, to compensate them for expenses incurred in connection with travel, mediation costs, and mailing expenses, is also reasonable and should be approved by this Court. See Lichten Decl. ¶¶ 31-32; Schalman-Bergen Decl. ¶ 24; Blanchard Decl. ¶ 18.

## IV.    CONCLUSION

Based upon the foregoing, the Parties respectfully request that the Court grant this Motion and issue an Order: 1) approving Plaintiffs' attorneys' fees in the amount of one-third of the Gross Settlement Agreement and costs and expenses of $20,000.00; 2) approving incentive payments in the amount of $5,000.00 to Plaintiffs Jill Kiley and Marcus Payne, and $3,000.00 each to Plaintiffs Brittney Relliford, Babatunde Olaseinde and Robert Farley; and 3) granting approval of the Settlement Agreement and dismissing this case with prejudice in accordance with the terms of the Settlement Agreement.

/s/Olena Savytska
Harold Lichten*
Olena Savytska*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Tel: (617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

Sarah R. Schalman-Bergen*
Alexandra K. Piazza*
BERGER MONTAGUE PC
1818 Market St., Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
scarson@bm.net
sschalman-bergen@bm.net
apiazza@bm.net

David M. Blanchard*
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Tel: (734) 929-4313
blanchard@bwlawonline.com

David A. Hughes (HUG038)
HARDIN & HUGHES, LLP
2121 14th St.
Tuscaloosa, AL 35401
(205) 344-6690
dhughes@hardinhughes.com


*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

/s/Jason Gunter
Jason L. Gunter
GUNTERFIRM
1514 Broadway, Suite 101
Fort Myers, FL 33901
Tel: (239) 334-7017
jason@gunterfirm.com

*Attorneys for Defendants*

Dated: October 9, 2020